632 A.2d 581

**Melvin E. SOLL, Appellant,**

v.

**Linda Gwen SOLL.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1993.

Filed Oct. 29, 1993.

Kenneth J. Benton, Philadelphia, for appellant.

Thomas Ganiaris, NJ, for appellee.

Before WIEAND, CIRILLO and HESTER, JJ.

HESTER, Judge:

Melvin E. Soll appeals from the November 30, 1992 order entered by the Court of Common Pleas of Montgomery County in this support action. Linda Soll, appellee, originally filed an action for support on October 12, 1973. A support order was entered on October 23, 1974. Subsequently, the parties entered into a separation agreement on July 29, 1980 (hereinafter "separation agreement"), in which, *inter alia*, they stipulated to a consensual increase in the outstanding support order. Appellant asserts the court erred in directing him to pay arrearages and current support under penalty of being found in contempt. He maintains that since his children now are in their majority, and the separation agreement represented a complete resolution of all disputes between the parties, the court presently lacks subject matter jurisdiction to invoke its contempt powers and to use them to enforce payment of support under the separation agreement. He argues that appellee's sole remedy, instead, is to sue him under the separation agreement in civil court. We disagree and affirm.

The record reveals the following. The parties were married on July 20, 1969. Two children were born of the marriage: Jacquelyn, born August 15, 1970, and Michael, born April 2, 1973. Appellant is an attorney admitted in this Commonwealth and owns a business which provides him with a comfortable income. Appellee also worked outside the home. The parties separated as of August 3, 1973. Appellee filed a support action on October 12, 1973, and a hearing was held on November 7, 1973. A support order was entered on October 23, 1973, which directed appellant to pay unallocated support in the amount of $100 per week. On April 16, 1975, a hearing for non-payment of support was scheduled and continued to May 23, 1975. On that date, the court increased the support

order to $150 per week. On March 31, 1980, appellee petitioned for increased support. Appellant filed preliminary objections in which he asserted that appellee had adopted another jurisdiction since she had moved to New Jersey. The master found that jurisdiction in Montgomery County, Pennsylvania, remained valid and had not been divested. He ordered the parties to exchange financial information. Appellant then filed exceptions to this finding which were dismissed.

On July 29, 1980, the parties entered into a separation agreement. It included provisions for custody, equitable distribution in a lump-sum payment, medical expenses, life insurance, payment of college expenses, and religious training. It also stated that the agreement would be incorporated in the pending divorce decree. It did not either mention or preclude merger. Finally, paragraph five or the agreement provided for child support, stating:

> *Child Support.* Husband shall pay the sum of One Hundred Sixty ($160.00) Dollars per week for the support of his two (2) minor children. Husband agrees to execute any and all documents required to increase the present Montgomery County Support Order designated as No. 456 July Term, 1973, from One Hundred Fifty ($150.00) Dollars per week, to One Hundred Sixty ($160) Dollars per week. Husband's obligation for child support shall continue until the last child completes his college education, if pursued at an accredited institution on a full-time basis, marries or is self-supporting, or is otherwise emancipated, whichever shall first occur.

On August 29, 1980, appellant signed his consent to an increased support *order* in the amount of $160 per week.

On June 8, 1983, the support order sur civil contempt was transferred to Philadelphia County. On May 30, 1988, the Court of Common Pleas of Philadelphia County entered an order vacating the support order without prejudice to enable its transfer to Louisiana, where appellant had relocated. The Philadelphia Domestic Relations file contains a notation made on June 9, 1988, which indicates that transfer of jurisdiction from Montgomery County for the purpose of transferring the support order to Louisiana was declined since appellant no

longer was in Louisiana. On November 8, 1988, a judge in the family court in Baton Rouge, Louisiana, dismissed the support order since appellant was not living in that jurisdiction. In November, 1988, appellee had the arrearages reduced to judgment.

On November 6, 1991, appellant petitioned for a decrease in support based upon changed circumstances, which he subsequently withdrew. On January 15, 1992, appellant filed a petition in Montgomery County to vacate the August 29, 1980 support order on the basis that the court lacked subject matter jurisdiction. On January 16, 1992, the master modified the August 29, 1980 order by ordering appellant to pay $1,500 in arrearages forthwith, as well as current support, or to be held in contempt. On July 21, 1992, the master dismissed appellant's petition to vacate, and appellant filed exceptions. On November 30, 1992, the trial court dismissed appellant's exceptions and adopted the master's order. This timely appeal followed.

█ Appellant first argues that the trial court erred in dismissing his exceptions in which he contended the court lacked subject matter jurisdiction. He asserts that since the children have attained their majority, the court no longer has jurisdiction over their support. He relies upon the recent decision of our Supreme Court in *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992), holding that nothing in the Divorce Code suggests that the Legislature intended to obligate parents to support their children past their majority and compel parents to pay for college education expenses.

This argument lacks merit. First, in the separation agreement, appellant specifically obligated himself to pay for the college expenses of his children as long as they were enrolled in an accredited, post-secondary institution. This independent contractual obligation continues and is not extinguished by *Blue v. Blue, supra. Goss v. Timblin*, 424 Pa.Super. 216, 622 A.2d 347 (1993) (specific agreement to pay college costs is contractual obligation interpreted on its own terms and is not invalid under the *Blue* decision).

Moreover, by Act 62, approved July 2, 1993, our Legislature overruled the holding in *Blue*. We have noted that this statute specifically was applied to all support orders in effect. *See Hecker v. O'Connell*, 427 Pa.Super. 608, 629 A.2d 1036 (1993). Since the instant support order was in effect on that date and one of his children was attending college, appellant's argument that the court no longer has jurisdiction on this basis is incorrect.

█ Next, appellant asserts the general proposition that the trial court cannot insert language into a comprehensive agreement where the language is clear and unambiguous. Moreover, he contends that absent language permitting merger, the court may not find ambiguity for the purpose of merger and thereby modify the agreement of the parties or use its contempt powers. He argues that the separation agreement is clear and comprehensive since it addressed custody, lump sum equitable distribution, visitation, health and life insurance, legal fees, and religious training. In this context, he claims the child support provision should be regarded as a term of the contract. He thereby infers that the parties intended to substitute the terms of the agreement for the existing support order. Consequently, he argues that only the separation agreement continues to exist, and it is not enforceable through contempt but only as a contract. In support, appellant relies upon *Andursky v. Andursky*, 382 Pa.Super. 1, 4, 554 A.2d 571, 573 (1989), where we stated:

> In *Sonder* [*v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988)], our Court recently held that an agreement that speaks of incorporation but rejects merger is not enforceable under the Divorce Code. That is, the remedies of attachment of the person and wage attachment are not permissible when the agreement rejects merger. *Id.; Dechter v. Kaskey*, 379 Pa.Super. 45, 549 A.2d 588, 590 (1988). Such agreements, however, are governed by the law of contract, and are still enforceable in an action in assumpsit or in equity by specific performance although the remedies for enforcement of support orders are not available. *Id.*, 379 Pa.Super. at 496, 549 A.2d at 165.

Finally, he notes lack of jurisdiction cannot be waived and may be asserted at any time. *Andursky v. Andursky, supra.* Thus, he concludes that he may assert lack of jurisdiction at any time, and appellee's sole remedy for for non-payment of support is to sue him for breach of contract. *Id.*

■ We disagree. First, we previously found that appellant's obligation for support continues even though his children are in their majority since his daughter currently is attending college. Thus, the support order continues in existence and is enforceable. Second, the case law relied upon by appellant is distinguishable in that the cases cited involve language specifically precluding merger or do not involve incorporation of a support order which remains in existence. We note that it is possible for support agreements and support orders to exist simultaneously, stand apart, and be enforced separately. *See Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1980); *Madnick v. Madnick,* 339 Pa.Super. 130, 488 A.2d 344 (1985).

Instantly, as found by the trial court, the separation agreement expressly stipulates to modification by the court of a prior support order. The parties did not express an intent for the court to vacate the support order and substitute in its place the support provision set forth in the agreement. Indeed, the agreement referred specifically to the case number and term of the support order which it modified. Thus, the support order remained in effect along with continued subject matter jurisdiction.

■ In these circumstances, we agree with the trial court that the correct procedure is to determine the intent of the parties to the agreement. *See D'Huy v. D'Huy,* 390 Pa.Super. 509, 568 A.2d 1289 (1990) (where the court rejected the concept that incorporation automatically meant merger but instead was governed by the intent of the parties). We further agree that in the separation agreement, the parties specifically expressed their intent to include the support order as a term of their agreement. This manifested their intent to have the separation agreement governed by the provisions of

the Divorce Code. Subsequent to the execution of this agreement, appellant sought to have the court decrease his support until he withdrew his request. Appellee also requested the court to modify support by increasing it. This supports the inference that both parties assumed that the support order remained in effect and could be modified by the court. In addition, since the agreement incorporated a former support order by reference, this infers that the parties understood that the court would retain jurisdiction. Since the order remains in effect, so did the court's subject matter jurisdiction. Finally, the agreement itself does not reject merger.

For the foregoing reasons, we conclude that the court had jurisdiction to modify and enforce support by its contempt and attachment powers.

Order affirmed.