**Sharon G. PECK, Appellee,**

v.

**Ivan J. PECK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1997.

Filed March 6, 1998.

* Retired Justice assigned to Superior Court.

Thelia J. Eaby, Lancaster, for appellant.

Larry B. Maier, Ephrata, for appellee.

Before HUDOCK, MONTEMURO * and BECK, JJ.

MONTEMURO, Judge:

Appellant/Husband, Ivan Peck, appeals the January 7, 1997 Order of the Lancaster County Court of Common Pleas dismissing his Petition for Modification of an alimony award. This appeal involves the significance of a court-imposed support order for alimony entered pursuant to a post–1988 property settlement agreement. We affirm.

Appellant/Husband and Appellee/Wife were married in January of 1959, and separated in October of 1994. On October 26, 1994, the couple executed a Property Settlement Agreement ("the Agreement"), which provides, *inter alia,* that Appellant will pay Appellee $400.00 per week "until divorce as spousal support and thereafter as alimony for the balance of her life." (Property Settlement Agreement at ¶ 12). The Agreement also states that this alimony award shall be entered as an order of the court, (*id.*), and precludes modification or waiver of any of its terms unless "in writing and signed by both parties." (*Id.* at ¶ 26).

The parties were divorced on June 9, 1995. Pursuant to the Agreement, on June 28, 1995 the court entered a stipulated support order, signed by both parties, which mirrored the alimony and medical benefits provisions contained in the Agreement. This order was modified by stipulation on September 20, 1995 to include the Agreement's provisions regarding Appellant's pension.

Appellant filed a Petition for Modification of the September 20th support Order on July 15, 1996, based upon an unforeseen decrease in his income.[1] Following a January 3, 1997 hearing, the trial court dismissed Appellant's Petition on January 7, concluding that "the agreement of the parties of October 26, 1994 is controlling." (Order, dated January 7, 1997). Appellant filed post-trial motions and a motion for reconsideration, which were both denied by the trial court on January 29, 1997. This timely appeal followed.

Appellant presents one issue for our review:

WHEN PARTIES DESIRE TO CONVERT A PROVISION OF THEIR MARITAL CONTRACTUAL AGREEMENT INTO AN ORDER OF THE COURT THROUGH DOMESTIC RELATIONS, IS THAT ORDER THEN REVIEWABLE BY THE COURT?

(Appellant's Brief at 3). After a thorough review of the parties' briefs, the record, and the relevant statutory and case law, we conclude that the trial court properly dismissed Appellant's petition for modification since the parties' property settlement Agreement is controlling, and the court was without authority to modify the Agreement's alimony award.

Our review of alimony orders is narrow; "we review only to determine whether there has been an error of law or abuse of discretion by the trial court." *Lee v. Lee*, 352 Pa.Super. 241, 507 A.2d 862, 865 (1986). An abuse of discretion entails a misapplication of the law or a manifestly unreasonable judgment in light of the record. *Id.* 507 A.2d at 865.

Prior to the 1988 Amendments to the Divorce Code, a property settlement agreement, executed by the parties in a divorce action, which was incorporated, but not merged, into a divorce decree was *not* enforceable under the Divorce Code; "[s]uch agreements ... [were] governed by the law of contract[.]" *Andursky v. Andursky*, 382 Pa.Super. 1, 554 A.2d 571, 573 (1989). Therefore, if the agreement precluded modification of an alimony award, the trial court was without jurisdiction to modify its terms. *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988).

■ Section 3105 of the Divorce Code now permits *enforcement* of both merged and unmerged property settlement agreements under the Code. *See* 23 Pa.C.S. § 3105(a). However, "[t]he amendment neither adds to nor subtracts from the substantive rights of the parties under their [property settlement agreement]; rather, it merely provides an additional procedural vehicle for the **enforcement** of their respective rights under their [property settlement agreement]." *Jackson v. Culp*, 400 Pa.Super. 519, 583 A.2d 1236, 1238 (1990), *allocatur denied*, 529 Pa. 621, 600 A.2d 537 (1991)(emphasis added). Thus, a party who utilizes the enforcement power under Section 3105 still preserves his or her right to file a civil or equitable action on the property settlement agreement itself. *Id.* Further, Section 3105 codified the law in Pennsylvania which precluded court modification of the alimony provisions in such an agreement:

In the absence of a specific provision to the contrary appearing in the agreement, **a provision regarding** the disposition of existing property rights and interests between the parties, **alimony,** alimony pendente lite, counsel fees or expenses **shall not be subject to modification by the court.**

23 Pa.C.S. § 3105(c)(emphasis added); *Sorace v. Sorace*, 440 Pa.Super. 75, 655 A.2d 125, 129 (1995), *allocatur denied*, 542 Pa. 673, 668 A.2d 1135 (1995). *See McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360, 1365 (1992)(*en banc* ) (holding trial court did not err in applying § 3105(c) to pre–1988 agreement and refusing to modify alimony

1. Appellant accepted an early retirement package    from his company effective July 8, 1996.

provision of property settlement agreement since amendment "was merely a codification of the existing Pennsylvania law."); *Brower v. Brower,* 413 Pa.Super. 48, 604 A.2d 726 (1992) (holding that under § 401.1, precursor to § 3105(c), trial court could not modify alimony provision of property settlement agreement). Mindful of this history, we consider the Agreement at issue in the present case.

Preliminarily, we note that the Agreement, by its own terms, is incorporated but not merged into the divorce decree. Appellant contends that the Agreement and divorce decree merged since neither specifically addresses merger. We disagree.[2] To determine whether an agreement has merged with a divorce decree, we must look to the intent of the parties. *Jones v. Jones,* 438 Pa.Super. 26, 651 A.2d 157, 158 (1994). "The starting point for determining the intent of the parties is the language and terms of the agreement itself." *Id.* Here, although the Agreement provides for incorporation into the divorce decree, (Agreement at ¶ 3), it clearly states that it "shall continue in full force and effect after such time as a final decree in divorce may be entered with respect to the parties." (*Id.* at ¶ 2). Moreover, with respect to the alimony provision, the Agreement states that

> [t]he alimony provided herein is intended to be **permanent in nature and shall not be reduced for any reason except for the death or remarriage of Wife.** It is agreed that the spousal support and alimony provided herein shall be entered as an order of Court through Domestic Relations and Husband shall, within fifteen days of the completed execution of this agreement, and thereafter, execute such documents as Wife may require to carry out the provisions of this paragraph. The foregoing to

the contrary notwithstanding, **Wife shall have a separately enforceable contract right to the spousal support and alimony in the amounts provided for herein,** and Husband's obligation under same shall not be decreased regardless of the fact that circumstances might justify the lowering or termination of the Domestic Relations order entered pursuant to this agreement.

(Agreement at ¶ 12)(emphasis added). Therefore, according to its clear and unambiguous language, the Agreement did not merge with the divorce decree. *See Jones, supra* (finding no merger when language of agreement clearly states that it shall survive divorce decree, and divorce decree does not expressly merge agreement); *Jackson, supra* (finding no merger when agreement states that it shall survive divorce decree and divorce decree does not mention merger).[3]

If the present case involved only a property settlement agreement, our analysis would end here. Under Section 3105(c), the trial court would be precluded from modifying the alimony provisions in the agreement, and, accordingly, Appellant would be entitled to no relief. However, this case also involves a court-imposed support order, agreed to and signed by both parties, which incorporates the alimony terms in the Agreement. It is the entry of this order, Appellant argues, that is significant. His position is that once the court entered a support order the Agreement merged with the order, and, pursuant to 23 Pa.C.S. § 3701(e),[4] the trial court was empowered to modify the order based on a party's change in circumstances. We disagree.

This Court has held that a property settlement agreement can merge with a court-imposed support order, thus permitting judicial modification of the terms of the agree-

---

**2.** Although the divorce decree is not a part of the original record, there seems to be no dispute that the decree was silent as to merger.

**3.** Appellant argues that *Sonder, supra,* requires a divorce decree to specifically reject merger in order to prevent merger. *See* Appellant's Brief at 15–16. However, this argument was rejected by an *en banc* panel of this Court in *D'Huy v. D'Huy,* 390 Pa.Super. 509, 568 A.2d 1289 (1990), *allocatur denied,* 525 Pa. 646, 581 A.2d 572

(1990). *See Id.* at 517 n. 3, 568 A.2d at 1293 n. 3.

**4.** Section 3701(e) provides, in pertinent part:

> **(e) Modification and termination.**—An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. . . .

ment, when the support order *precedes* and is *incorporated* into the agreement. *See Soll v. Soll,* 429 Pa.Super. 312, 632 A.2d 581, 584 (1993)(holding that parties "manifested their intent to have the separation agreement governed by the provision of the Divorce Code" when they incorporated existing support order into subsequent pre–1988 property settlement agreement and both parties petitioned the court for modification of terms; trial court had jurisdiction to modify payment amounts); *Lee v. Lee,* 352 Pa.Super. 241, 507 A.2d 862, 863–64 (1986)(holding that when settlement agreement provided for entry of support order with terms identical to outstanding order of support previously entered, parties did not intend to "create a contractual obligation for the payment of alimony which was separate and apart from the court order." ).

The present case, however, is distinguishable for two reasons. First, the court-imposed support order at issue was entered *after,* albeit pursuant to, the Agreement. Secondly, the Agreement clearly and unambiguously states the parties' intention that it provide a separate alimony obligation:

> Wife shall have a separately enforceable contract right to the spousal support and alimony in the amounts provided for herein, and Husband's obligation under the same shall not be decreased regardless of the fact that circumstances might justify the lowering or termination of the Domestic Relations order entered pursuant to this agreement.

(Agreement at ¶ 12). Therefore, it is clear that the parties agreed that the alimony provisions would be non-modifiable, except if in writing signed by both parties. Under these facts, this Court's decision in *Woodings v. Woodings,* 411 Pa.Super. 406, 601 A.2d 854 (1992), is directly on point.

In *Woodings,* the Husband and Wife executed a property settlement agreement in April 1989 which provided for $3800 per month in alimony to be paid from Husband to Wife beginning in April 1989 and ending in December 1993. *Id.* 601 A.2d at 855. The agreement also stated that the payments were not modifiable and would terminate only upon the death of Wife. *Id.* Subse-

quently, the trial court entered a consent Order which incorporated the terms of the agreement. *Id.*

Husband filed a petition to terminate the alimony payments in March 1990 because Wife was cohabitating with another man. *Id.* Pursuant to Section 507 of the Divorce Code, now codified at 23 Pa.C.S. § 3706, a party is not entitled to alimony if he or she "has entered into cohabitation with a person of the opposite sex who is not a member of the family of the petitioner within the degrees of consanguinity." *Id.* *See* 23 Pa.C.S. § 3706. The trial court, however, concluded that the agreement was controlling and, therefore, the payments were terminable only upon Wife's death. *Woodings,* 601 A.2d at 855.

On appeal, this Court affirmed, concluding that Section 3706 applies only to support awards ordered by the court.

> Alimony due under an *agreement* of the parties, even if incorporated in a court Order, is paid as a result of the agreement and not of an award. Section [3105(c) ] forbids modification of an agreement for alimony, and by implication an attempt to terminate a provision of the agreement would be beyond the powers of the court unless expressly provided in the agreement.

*Id.* at 856 (emphasis in original). *See Van-Kirk v. VanKirk,* 336 Pa.Super. 502, 485 A.2d 1194 (1984)(holding that pre–1988 property settlement agreement awarding Wife alimony is controlling despite the fact that agreement was incorporated in consent order and Wife cohabited with another man in violation of Section 507).

Similarly, in the present case, the parties' Agreement controls Appellee's alimony award. Although the parties agreed to enter a support order, "the treatment of Orders approving agreements is treated separately from Orders directly entered by the court and the jurisdiction of the court is limited to *enforcement only* unless the agreement provides otherwise." *Woodings,* 601 A.2d at 854 (emphasis in original). Thus, the September 20th support Order had no independent significance; it simply provided Appellee with a means to enforce the alimony terms in the

Agreement other than by filing a civil action in contract. *See Gaster v. Gaster,* 703 A.2d 513, 518 (Pa.Super.1997) (vacating support order entered following contempt petition for failure of Father to contribute to college support of daughter as provided in property settlement agreement; "Mother's filing of an action in contempt where no [previous] support order existed, and the court's entry of an order which neither made a finding of contempt nor imposed sanctions, vitiates the propriety of this appeal.").

We note that the recent Supreme Court decision in *Nicholson v. Combs,* 703 A.2d 407 (Pa.Super.1997), and this Court's decision in *Patterson v. Robbins,* 703 A.2d 1049 (Pa.Super.1997), do not affect our conclusion. In *Nicholson,* the Supreme Court addressed the interplay between a pre–1988 property settlement agreement and a subsequent court-imposed child support order. The Court held that a court-imposed support order and a bargained-for property settlement agreement can coexist, providing parties with remedies both under the Divorce Code and in a law or equity action. *Nicholson,* at 417. A court may modify its own support order downward "if such reduction is necessary to prevent payor from having to comply with an order that he cannot pay due to changed circumstances." *Id.* at 417. However, the Supreme Court held that, nevertheless, the payee "does not abandon his or her right to sue on the contract merely by bringing an action under the existing order." *Id.*

*Nicholson* differs from the instant case, however, in two important ways: (1) *Nicholson* involved a pre–1988 agreement, and (2) *Nicholson* involved child support payments rather than alimony. The 1988 Amendments to the Divorce Code clearly mandate that alimony provisions in a property settlement agreement are not modifiable by the court, while child support provisions are *always* modifiable if a party can show a change in circumstances. *See* 23 Pa.C.S. § 3105(b), (c).

Similarly, *Patterson v. Robbins, supra,* involved a marital settlement agreement which provided for child support payments, and was entered into after the 1988 amendments. This Court held that a support order, entered after the agreement, was modifiable

pursuant to Section 3105(b). *Patterson,* at 1051. However, we also concluded that Wife could still maintain a separate contract action to enforce the terms of the agreement. *Id.* at 1052. Conversely, in the present case, the Divorce Code specifically precludes modification of alimony provisions in a property settlement agreement; thus, there is no need for Appellee to file a separate contract action on the Agreement.

 Therefore, we conclude that pursuant to 23 Pa.C.S. § 3105(c), the trial court did not have the authority to modify the terms of September 20th support Order since the order was voluntarily entered into by the parties based on their property settlement Agreement. Thus, since the Agreement precludes modification of its terms unless in writing signed by both parties, the trial court properly dismissed Appellant's petition for modification.

Order affirmed.